ALANSON FOLSOM *vs.* WILLIAM H. CLEMENCE.

A mortgage cannot be avoided under § 35 of the bankrupt act, (U S. St. 1867, c. 176,) if made more than six months before the date of the mortgagor's petition in bankruptcy, although recorded within four months of said date.

The fact that a mortgagee of personal property agreed not to put his mortgage on record unless the mortgagor should have trouble, does not, as matter of law, avoid the mortgage as to creditors of the mortgagor.

In an action by a mortgagee of goods against an officer who attached them upon a writ against the mortgagor, an exception to the refusal of the judge to rule that the demand made by the mortgagee, under the Gen. Sts. c. 123, §§ 62, 63, was for an amount greater than was due, will not be sustained, if the fact of such excess was not found at the trial, and is not to be ascertained from the bill of exceptions except by computation.

The owner of goods gave two mortgages thereon, one, dated December 15, 1869, to secure a promissory note for $2862, and the other, dated March 24, 1870, to secure a promissory note for $1000. The mortgaged goods, with others, having been attached on a suit against the mortgagor, the mortgagee made the following written demand on the attaching officer: "To the officer holding the goods in [the mortgagor's shop]. You are hereby notified that I hold two mortgages on said goods, one dated December 15, 1869, for $2862, and the other dated March 24, 1870, for $1000, on which mortgages the sum due is $3723.30. On the back of the first note named therein are the following indorsements: [stating them.] And I now demand payment of said notes to me secured by said mortgages. October 21, 1870." *Held,* that this demand was sufficient in form.

A mortgage dated 1870, without month or day of the month, but indorsed "Dated March 24, 1870," and delivered on that day, is correctly described in a demand by the mortgagee on an attaching officer, under the Gen. Sts. c. 123, §§ 62, 63, as "dated March 24, 1870."

A demand by a mortgagee of goods, under the Gen. Sts. c. 123, §§ 62, 63, against an officer who has attached them on a writ against the mortgagor, is not defective because it does not distinguish the mortgaged goods from other goods with which they are commingled, and which the officer holds under the same attachment.

TORT for taking and carrying away certain enumerated articles of personal property. Writ dated November 1, 1870. At the trial in the Superior Court, before *Pitman,* J., the following facts appeared:

The property was part of the stock in trade of Josiah Grover and Charles H. Harvey, clothing dealers in Lowell, under the style of Grover & Harvey. The plaintiff claimed title under two mortgages from Grover & Harvey to him. The first was dated December 15, 1869, and was given to secure a promissory note of the same date for $2862, payable on demand, with interest. The second was given to secure a note for $1000, payable on demand, with interest, and was dated 1870, without month or day of the month, but on its back was written "March 24, 1870,"

following the printed word " Dated ; " and the attesting witness swore that this was written on the day of making the mortgage. Neither of these mortgages were recorded until July 18, 1870. After these mortgages were given, Grover & Harvey continued business until September 24, 1870, when their stock, including the property mortgaged and also other property, was attached by the defendant, a deputy sheriff, on writs in favor of creditors of Grover & Harvey.

On October 28, 1870, the plaintiff, under the provisions of the Gen. Sts. *c.* 123, §§ 62, 63, served on the defendant the following written notice : " To the attaching creditors or to William H. Clemence, the officer holding the goods in the shop No. 31 on Merrimack Street in Lowell in the county of Middlesex and Commonwealth of Massachusetts. You are hereby notified that I hold two mortgages on said goods, the one, dated December 15, 1869, for the sum of $2862, and the other, dated March 24, 1870, for the sum of $1000, on which mortgages the sum due at this date is three thousand seven hundred and twenty-three dollars and thirty cents. On the back of the first note named therein are the following indorsements : ' March 15, 1870. Received on the within note three months interest.' ' April 12, 1870. Received of the within note one hundred dollars.' ' May 21, 1870. Received sixty-two dollars and interest on the sixty-two paid to date.' ' October 10, 1870. Received on the within note one hundred and eighty-three dollars and sixty cents.' And I now demand payment of said notes to me secured by said mortgages. Lowell, October 21, 1870. Alanson Folsom." The defendant objected to the admission of this notice in evidence, but the judge admitted it.

On November 14, 1870, Harvey petitioned that he and his partner might be adjudged bankrupts ; on December 8 they were adjudged bankrupts ; and on December 24 an assignee was appointed, to whom the estate of the bankrupts was duly assigned, and who took upon himself the defence of this action.

There was conflicting evidence as to the circumstances attending the making of these mortgages, and on the question whether they were fraudulent or not, and, among other things, there was

evidence tending to show that Grover & Harvey understood that the mortgages were not to be put on record unless they got into trouble.

The defendant contended " that the mortgages took effect against no one except the parties thereto until July 18, 1870, when they were recorded, and that they were void as against the bankrupt law, or were *prima facie* evidence of fraud;" and he also objected to the sufficiency of the demand on the ground " that it did not disclose that the mortgages were given to secure notes; that it did not state how much was due on the mortgages, either separately or in the aggregate; and that it did not state a true and just account of the debt or demand for which, as he alleged, the property was liable to him." And he asked the judge to instruct the jury as follows:

" The conveyance by Grover & Harvey of all their stock in trade to secure the plaintiff was an act of bankruptcy. It was not a transaction in the usual and ordinary course of their business, and was *prima facie* evidence of fraud. Neither of the mortgages was valid or effectual against an attaching creditor, or the assignee in bankruptcy or any other person, until it was recorded; and the four or six months, as the case may be, mentioned in § 35 * of the bankrupt act, begin to run from the time of the recording, and not from the date of the mortgages. Insolvency means inability to pay in the usual and ordinary course of one's business. A person may be legally insolvent and still have

---

* The 35th section of the bankrupt act (U. S. St. 1867, *c.* 176) provides " that if any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him," makes any assignment, transfer or conveyance of any part of his property with a view to give a preference to any creditor, such creditor having reason to believe him insolvent, such assignment, transfer or conveyance shall be void; " that if any person, being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him," makes any assignment, transfer or conveyance of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency with a view to defraud the bankrupt act, such assignment, transfer or conveyance shall be void; and if such assignment, transfer or conveyance " is not made in the usual and ordinary course of business of the debtor, the fact shall be *prima facie* evidence of fraud."

property enough to pay his debts. If the jury find that the mortgages were given, not in the usual and ordinary course of the debtor's business, and to secure or prefer the plaintiff as a creditor, or in any way in fraud of the bankrupt act, the mortgages could have no force or effect as against the assignee until they were recorded."

" The demand of the plaintiff did not state a just and true account of the debt or demand, for which, as he alleges, the property was liable to him. It states that one of the mortgages was dated March 24, 1870, which was false. It had no date. It does not state the amount for which the property was liable to him on each mortgage separately, nor the sum due him on each mortgage. It does not give the names of the parties to the mortgages, nor their place of residence or business, nor where the mortgages were recorded, nor to whom the amount thereof was due, nor does it demand payment of money due on either mortgage. It is uncertain, ambiguous and untrue, and tended to mystify and mislead. Neither the record of the second mortgage nor the demand disclosed the date of the mortgage, nor the amount, principal or interest, due thereon, nor the (attached) property included therein."

But the judge declined so to instruct the jury, and instructed them " that although by the provisions of the General Statutes these mortgages were not valid against third parties until recorded, yet as they were in fact recorded before the attachments by creditors, they took precedence of such claims unless they were originally fraudulent; " and added, in reference to a suggestion of the defendant, that " if there was an arrangement between Grover & Harvey and the plaintiff that the mortgages should not be recorded in the usual and ordinary course, for the reason that the recording thereof would injure the credit of the mortgagors or otherwise, and the plaintiff did not get them recorded till he feared the mortgagors would not be able to pay, that was a matter entitled to consideration by the jury in passing upon the question whether the mortgages were given and received with the intent to hinder, delay or defraud creditors." And he further instructed the jury " that the mortgages took effect from their delivery to the plaintiff, and were not affected by the bankrupt

act, being too remote in time, but that their validity was to be determined by the rules of the common law; that the plaintiff must, in the first place, satisfy the jury that he had made a just and true account of the indebtedness of Grover & Harvey to him in his demand upon the officer; that if he satisfied them of this, they were then to inquire whether either of these mortgages was given to hinder, delay or defraud creditors with a participancy in such intent on the part of the plaintiff; and that if either was so given, it was invalid, and the account stated would not be a just and true account, and their verdict must be for the defendant." He stated the common law as to fraudulent conveyances as prayed for by the defendant.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*T. Wentworth,* for the defendant.

*D. S. Richardson & R. B. Caverly,* for the plaintiff.

WELLS, J.   All questions of fraud at common law were settled, at the trial, in favor of the mortgagee; and there is no exception upon that part of the case.

The mortgages were recorded prior to the attachments, and prior to the assignment in bankruptcy.   They were valid between the parties from the time they were executed.   The provisions of the Gen. Sts. *c.* 151, § 1, therefore, cannot be relied on to defeat the mortgage.

The provisions of the bankrupt act, § 35, are applicable only to transactions which took place with the debtor within the limited periods named before the filing of the petition by or against him.   They are independent of local statutes requiring registration.   As both mortgages were made more than six months before the proceedings in bankruptcy, the several rulings requested in regard to their validity under the bankrupt law were rightly refused.

The judge rightly ruled also that the arrangement or understanding in regard to withholding the mortgages from record unless the mortgagors should have trouble, did not render them void, but was "a matter entitled to consideration by the jury in passing upon the question" of fraud at the common law.

All the other exceptions relate to the question of the sufficiency of the demand upon the officer by the mortgagee.

It is contended that the demand was for a larger sum than was due on the notes. That is a question of fact, not found at the trial, and not disclosed or to be ascertained upon the bill of exceptions without a computation, which it is not the duty or the province of the court to make. The demand states the sum due on both mortgages to be $3723.30. The original amount and date of each is stated separately. The amount and dates of the several indorsements on the first note are given with precision. It concludes : " And I now demand payment of said notes to me secured by said mortgages."

The purpose of the written demand required of the mortgagee is to give the officer or attaching creditor notice of the existence of the claim, and such information as to its nature and amount as will enable him to act understandingly in reference to it. If it is sufficiently explicit and accurate to answer these purposes, it is not rendered invalid by mere informalities. If made in good faith, it will not be defeated by inaccuracies or other defects which do not tend to mislead, or by which the parties in the particular case could not be damnified. *Rowley* v. *Rice*, 10 Met. 7. *Witham* v. *Butterfield*, 6 Cush. 217. *Brewster* v. *Bailey*, 10 Gray, 37.

The demand is for payment of the notes. If the sum named as due was too large, the means of correction were supplied in the written demand itself. The same means also enabled the officer or creditor to ascertain how much was due separately on each mortgage, if that was of any importance to them.

The date of the second mortgage was distinctly stated ; and the evidence tended to show that to have been the time of its delivery, which is the true date. The indorsement of the date upon the back of the mortgage was a sufficient dating of the instrument.

The officer could not well have been in doubt that the claim was made upon two notes.

It was not necessary for the mortgagee, in his written demand, to designate the articles included in his mortgages so as to distinguish them from others of a like character with which they might

be commingled. It was sufficient for him to be ready to point them out, or cause it to be done, when called upon by the officer to do so, for the purpose of separation. *Morrill* v. *Keyes,* 14 Allen, 222.

The demand gave to the officer and creditors all the informa- tion necessary for their guidance.     *Exceptions overruled.*